# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

JAMES LUECKE,

                    Plaintiff,

v.                                                    Case No. 05-CV-403

GENERAL ELECTRIC COMPANY and
SASHA NEUENSCHWANDER,

                    Defendants.

# DECISION AND ORDER

The *pro se* plaintiff, James Luecke ("Luecke"), filed suit against General Electric Company ("GE") and its employee Sasha Neuenschwander ("Neuenschwander") (collectively the "Defendants"), alleging that they discriminated against him because of his sex, defamed him, engaged in intentional and negligent misrepresentation, and engaged in false advertising and intentional and tortious interference with contract. Luecke also asserts a violation of Executive Order 11246. Pending before the Court are the Defendants' motion for summary judgment and motion for sanctions, as well as Luecke's motion for default judgment and motion for sanctions.

## BACKGROUND

GE is a worldwide manufacturer of products ranging from kitchen appliances to jet engines. (Defendants' Proposed Findings of Fact ("DPFOF") ¶ 1.) GE Healthcare

1

("GEHC"), a division of GE, designs, manufactures, sells and services a wide variety of medical diagnostic, monitoring and medical information storage equipment. (*Id.* at ¶ 2.) Neuenschwander is an employee of GEHC. (*Id.* at ¶ 3.)

On August 30, 2004, Luecke applied to GEHC to be an Assembler Tester. (*Id.* at ¶ 28-29.) Assembler Testers assemble, inspect and perform tests on mechanical and electrical assemblies. (*Id.* at ¶ 4.) When Luecke applied for this position, Neuenschwander was the Human Resources Administrator, which meant she was responsible for scheduling testing and interviews of applicants and assisting managers in making hiring decisions. (*Id.* at ¶ 22.)

All external applicants for the Assembler Tester position were required to take a job-related test called the "WorkKeys Assessment." (*Id.* at ¶ 14.) Luecke took the "WorkKeys Assessment" on September 17, 2004, but his score was not high enough at that time to qualify him for the Assembler Tester position. (*Id.* at ¶ 56.)

Upon receiving a letter notifying him of his low test score, Luecke called Neuenschwander and asked her whether applicants were permitted to retake portions of the test. (*Id.* at ¶ 63.) Neuenschwander responded that applicants could retake all or a portion of the test, but Luecke did not ask to retake any portion of the test. (*Id.* at ¶¶ 63-64.)

Shortly thereafter, GE determined that it needed more applicants for the Assembler Tester position. (*Id.* at ¶ 69.) Thus, GE reduced the score required on the WorkKeys Assessment to be further considered for employment. (*Id.*) Luecke's score met the new

2

threshold score, so Neuenschwander called Luecke on September 30, 2004, to schedule him for an interview for the Assembler Tester position. (*Id.* at ¶¶ 70-71.)

On October 4, 2004, Luecke interviewed with two Production Team Leaders – Todd Tesch and Nengi Krukrubo. (*Id.* at ¶ 72.) During his interviews, Tesch and Krukrubo asked Luecke about how he delegated work to other people, how he would ensure a quality output, how he would sell an idea or recommendation to another person, and how he handles conflicts with his co-workers. (*Id.* at ¶ 78.) Following Luecke's interviews, both interviewers recommended that GE not hire Luecke. (*Id.* at ¶ 79.) Tesch indicated on his written evaluation that he thought Luecke was arrogant, was evasive in answering his questions, and that his prior experience was not closely related to the Assembler Tester position. (*Id.* at ¶ 80.) Krukrubo recommended that Luecke not be hired because he believed Luecke did not have the leadership and delegation skills necessary to successfully work on the assembly line. (*Id.* at ¶ 82.)

In a meeting with Neuenschwander, Tesch and Krukrubo raised their concerns about Luecke. (*Id.* at ¶ 85.) As a result, Neuenschwander decided to call Luecke to schedule further interviews to see if other interviewers had similar concerns. (*Id.* at ¶ 85.) Neuenschwander called Luecke and left him a message indicating that GE would like to invite him back for additional interviews. (*Id.* at ¶ 86.) Luecke never returned her call. (*Id.* at ¶ 87.) Accordingly, GE took no further action with regard to Luecke's application. (*Id.* at ¶ 88.)

Between August 30, 2004, the date Luecke first applied for the Assembler Tester position, and December 31, 2004, GE hired 32 external candidates for that job. (*Id.* at ¶ 89.) Of those 32 candidates that were hired, 29 of them were men. (*Id.* at ¶ 90.)

## STANDARD OF REVIEW

A court will grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A "material fact" is one which, under the relevant substantive law, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact exists if a reasonable juror could find that the evidence supports a verdict for the nonmoving party. *Id.*

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. When considering the movant's case, the Court should take all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Hall v. Bennett*, 379 F.3d 462, 465 (7th Cir. 2004). If the movant meets his burden (by showing an absence of a genuine issue of material fact), the nonmovant may not rest on the pleadings. Instead, the nonmovant must come forward with evidence that there is a genuine issue for trial that would support a reasonable jury verdict on every issue for which he bears the

Case 2:05-cv-00403-RTR   Filed 06/06/06   Page 4 of 10   Document 124

burden of proof at trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *Celotex Corp.*, 477 U.S. at 322-24. If the nonmoving party bears the burden of proof on a matter at trial, and he is unable "to establish the existence of an element essential to [his] case," summary judgment is appropriate. *Celotex*, 477 U.S. at 322-23.

## DISCUSSION

### I.    Luecke's Title VII Discrimination Claim Against Neuenschwander

Under Title VII, individual supervisors or employees may not be sued in their individual capacity because they do not fall within Title VII's definition of "employer." *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995). Neuenschwander is an individual employee of GE, and thus is not an appropriate defendant under Title VII. Accordingly, Luecke's Title VII claim against Neuenschwander must be dismissed.

### II.    Luecke's Title VII Discrimination Claim Against GE

Two methods exist for proving that an employer discriminated in violation of Title VII. The first is by direct evidence, and the other is by an indirect burden-shifting approach. *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). Luecke offers no direct evidence of sex discrimination, so he attempts to prove his claim by the indirect, burden-shifting approach. Under this method, Luecke must first establish a *prima facie* case of discrimination by showing that he is (1) a member of a protected class; (2) that he applied for, and was qualified for, an open position; (3) that GE rejected him for the position; and (4)

5

that GE filled the position with an individual outside of his protected class. *Gore v. Indiana Univ.*, 416 F.3d 590, 592 (7th Cir. 2005).

Luecke fails to establish a *prima facie* case. In the fall of 2004, Luecke was competing for one of 32 Assembler Tester positions filled by external candidates. GE hired 29 men to fill those 32 positions. These numbers undermine any inference that GE discriminated against Luecke because of his sex. Furthermore, Luecke was interviewed by two men, both whom recommended he not be hired. Luecke offers no evidence that their recommendations were motivated by sex discrimination. Accordingly, because Luecke cannot establish a *prima facie* case, his sex discrimination claim must fail.

## III.    Luecke's Claim Under Executive Order 11246

Luecke raised a claim under Executive Order 11246, which is a directive prohibiting discrimination by government contractors. *See* 41 C.F.R. § 60-1.1. Executive Order 11246 and the regulations interpreting it, expressly state that the Department of Labor is responsible for enforcing the Order. *See* Executive Order 11246 § 201; 41 C.F.R. § 60-1.2. Accordingly, private causes of action, including employment discrimination claims, cannot be maintained under the Order. *See, e.g., Morris v. Amalgamated Lithographers*, 994 F. Supp. 161, 172 (S.D.N.Y. 1998). Luecke's claim under Executive Order 11246, therefore, must be dismissed.

6

## IV.    Luecke's Defamation Claim

Luecke avers that the September 20, 2004 letter that Neuenschwander sent informing him that his WorkKeys Assessment score was too low was defamatory. In order to establish a *prima facie* case of defamation under Wisconsin law, Luecke must establish that: (1) a false statement, (2) was communicated by speech, conduct, or in writing to a person other than the person defamed, and (3) the communication was unprivileged and tended to harm one's reputation. *See Hart v. Bennet*, 267 Wis.2d 919, 941 (Ct. App. 2003).

Luecke fails to establish his *prima facie* case. He offers no evidence that any of the statements in the letter were false. Nor does he provide any evidence that someone, other than himself, actually saw Neuenschwander's letter. Accordingly, Luecke's defamation action must be dismissed.

## V.    Luecke's Claims for Intentional and Negligent Misrepresentation

Luecke alleges that GE is liable for intentional and negligent misrepresentation because GE stated on its website that it is committed to fair employment practices, but, when dealing with Luecke, GE discriminated against him because of his sex.

Luecke's claim has no merit. At a minimum, actions for both intentional and negligent misrepresentation require him to show that (1) GE made a representation of fact that was untrue and (2) that he relied upon the representation to his detriment. *See Bellon v. Ripon College*, 278 Wis.2d 790, 795 (Ct. App. 2005). First, Luecke has not shown that GE's statement on its website was untrue based on GE's alleged discrimination against Luecke on

7

account of his sex. As mentioned above, Luecke was competing for 32 job positions, 29 of which were filled with men. Second, even if GE's statement on its website was untrue, there is no evidence that Luecke relied on that statement to his detriment. Accordingly, Luecke's misrepresentation claims must be dismissed.

## VI.   Luecke's False Advertising Claim

Section 103.43 of the Wisconsin Statutes provides that false advertising for labor arises from false descriptions of any of the following: (1) the kind and character of the work to be done, (2) the amount and character of the compensation to be paid for the work, (3) the sanitary or other conditions of employment, or (4) the failure to state that there is a strike or lockout at the place of employment. Luecke asserts that the Defendants violated § 103.43 by advertising the position as "open and available to the public."

Luecke's claim must fail. He has not shown that GE's statement was false, and even if it was false, it was not a statement about any of the four subject matters listed in § 103.43. Accordingly, Luecke's false advertising claim must also be dismissed.

## VII.   Luecke's Claims for Intentional and Tortious Interference with Contract

The most basic showing that Luecke must make to maintain his claims for intentional and tortious interference with contract is the existence of a contract. *See Preston v. Wis. Health Fund*, 397 F.3d 539, 542-43 (7th Cir. 2005). Luecke did not make this basic showing. Thus, his intentional and tortious interference with contract claims are also without merit.

8

## VIII.  Luecke's Motion for Default Judgment and Sanctions

Luecke filed a motion for default judgment, claiming that the Defendants engaged in "obstructionist tactics," violating 18 U.S.C. § 1001 and Federal Rule of Civil Procedure 26. His motion is baseless.  First, 18 U.S.C. § 1001 is a criminal statute that does not provide a private cause of action.  *See Daniels v. Am. Postal Worker Union*, 167 F.Supp.2d 999, 1003 (N.D. Ill. 2001).  Second, Luecke has not made a showing that the Defendants withheld documents in their initial disclosures, in violation of Rule 26(a)(1)(B).  In fact, Luecke quotes an old version of the rule, arguing that the Defendants were required to turn over all documents that are "relevant to disputed facts," as opposed to the current rule which only requires that parties produce documents that they "may use to support [their] claims."  *See* Fed. R. Civ. P. 26(a)(1)(B).  Luecke's motion for default judgment, therefore, is denied.

Luecke subsequently filed a motion for sanctions, premised on the same arguments that he raised in support of his motion for default judgment.  Accordingly, Luecke's motion for sanctions is also denied.

## IX.  The Defendants' Motion for Sanctions

In response to the baseless motion for default judgment filed by Luecke, the Defendants filed a motion for sanctions, pursuant to Federal Rule of Civil Procedure 11.  The Defendants argue that Luecke's motion is not based on existing law, and because similar motions for default judgment were denied in the past, Luecke knew his arguments were frivolous.

9

While the Court is disturbed by the meritless motions Luecke frequently filed in this litigation, they do not yet rise to the level of requiring sanctions being imposed against him. By granting the Defendants' motion for summary judgment, the litigation before this Court has ended. Thus, sanctions would serve no deterrent purpose. Furthermore, while Luecke's motions were clearly frivolous, it is not entirely clear Luecke, a *pro se* litigant, knew his motions were baseless when he filed them. The Court will, therefore, deny the Defendants' motion for sanctions.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

The Defendants' Motion for Summary Judgment (Docket No. 94) is **GRANTED**.

The Defendants' Motion for Sanctions (Docket No. 116) is **DENIED**.

Luecke's Motion for Default Judgment (Docket No. 91) is **DENIED**.

Luecke's Motion for Sanctions (Docket No. 106) is **DENIED**.

The clerk is directed to close this case and enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 6th day of June, 2006.

**BY THE COURT**


s/ Rudolph T. Randa
**Hon. Rudolph T. Randa**
**Chief Judge**